**Charles E. WOLFE, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. CV–82–227–BLG.**

United States District Court, D. Montana, Billings Division.

May 22, 1985.

Jack W. Burnett, Billings, Mont., for plaintiff.

John D. Steffan, Tax Div., Dept. of Justice, Washington, D.C., Lorraine D. Gallinger, Asst. U.S. Atty., Billings, Mont., for defendant.

## MEMORANDUM OPINION

BATTIN, Chief Judge.

This case is before the Court on cross-motions for summary judgment. For the reasons stated below, the defendant's motion is granted and the plaintiff's motion is denied.

## FACTS AND PROCEDURE

The facts of this case are not in dispute. The parties have filed an extensive stipulation of facts with the Court.

Charles E. Wolfe was the sole shareholder and president of Wolfe & Company (corporation), a corporation which leased tractor-trailers. Charles E. Wolfe also operated a business as a proprietorship known as Charles E. Wolfe d/b/a Evergreen Express (proprietorship) which was an "over-the-road" trucking business.

In tax years 1974, 1975, and 1976, the corporation incurred a $114,472.91 federal tax bill for federal employment taxes, diesel fuel taxes, highway use taxes, and penalties, fees, and interest. Charles E. Wolfe paid the taxes of the corporation after the Internal Revenue Service (Service) levied on Mr. Wolfe's Interstate Commerce Commission permits used in his trucking business. Mr. Wolfe contends that since he was never personally assessed with the tax liabilities of the corporation, the Service cannot look to his personal property for payment of the taxes due. The Service contends that it may properly look to Mr. Wolfe's personal property in payment of the corporation's taxes because the corporation was the alter ego of Mr. Wolfe, thus justifying the piercing of the corporate veil.

Mr. Wolfe also contends that certain penalties were improperly assessed against the corporation because the acts giving rise to the penalties were due to reasonable cause and not due to willful neglect. The Service contends that the reasons put forth by the plaintiff to avoid the imposition of penalties are insufficient.

## DISCUSSION

The primary issue in this case is whether the corporation was the alter ego of Mr. Wolfe. If it was, then the corporate veil can be pierced, and the Service can look to Mr. Wolfe's personal assets as a source of payment of the corporation's taxes.

As a general rule, a corporation is treated as a legal entity, separate and distinct from its shareholders. The corporation alone is held accountable for its debts, and the shareholders enjoy limited liability.

When the corporate entity is abused, however, the protection of limited liability may be lost. In such cases, courts may exercise their equitable powers to pierce the corporate veil. Since the doctrine is an equitable one, there is no general formula to fit all cases. Rather, the conditions under which a corporate entity will be disregarded vary according to the circumstances of each case.

A summary of the case law identifies a number of factors upon which courts have relied in deciding whether to pierce a corporate veil. Although no single factor or set of factors is determinative, a variety of combinations of the following factors may indicate that the corporation is the alter ego of its controlling shareholder:

1. Shareholder owns all or most of the corporation's stock.

2. Shareholder is a director and/or the president of the corporation.

3. Shareholder makes all corporate decisions without consulting the other directors or officers.

4. Shareholder, officers and/or directors fail to comply with the statutory requirements regarding operation of the corporation.

5. Shareholder's personal funds are comingled with the corporation's funds.

6. Shareholder's personal credit and corporation's credit are used interchangeably to obtain personal and corporate loans.

7. Shareholder's personal business records are not kept separate from corporation's business records.

8. Shareholder and corporation engage in the same type of business.

9. Shareholder and corporation have the same address.

10. Shareholder admits to third parties that the shareholder and the corporation are one and the same.

11. Corporation's profits and earnings are distributed through means other than dividends.

*See, Piercing The Corporate Veil,* 44 Mont.L.Rev. 91 (1983).

■ The facts of the instant case present the classic case of a shareholder so pervasively dominating corporate affairs that the shareholder and the corporation no longer have separate identities. Mr. Wolfe admitted in his deposition that "[a]ll the thing [corporation] amounted to was actually a screen." Mr. Wolfe was the sole shareholder of the corporation. Mr. Wolfe was a director and the president of the corporation. Mr. Wolfe made all the corporate decisions without consulting the other directors. The corporation did not even have a bank account. All the corporation's banking transactions were done through the proprietorship's bank account. The corporation did not have its own telephone. The corporation and the proprietorship were housed in the same office. The corporation's employee was paid by the proprietorship. Some of the corporation's equipment was purchased on the proprietorship's credit. All of the corporation's purchases were paid for on a proprietorship bank account. When the corporation received payment from third parties, the money was deposited into the proprietorship's bank account. Even Mr. Wolfe could not distinguish between the corporation and the proprietorship. Mr. Wolfe admitted in his deposition that "I don't really see how a person could go down through this thing and technically separate the two [the corporation and the proprietorship]." When asked if he considered the corporation and the proprietorship to be the same thing, he responded: "Yes."

It is clear that the corporation and the proprietorship were operated as a single instrumentality under the sole control of Mr. Wolfe. Therefore, it was proper for the Service to look to Mr. Wolfe's personal assets to satisfy the taxes of his alter ego corporation. *Terrapin Leasing, Ltd. v. United States*, 81–1 U.S.T.C. ¶ 9372 (10th Cir.1981); *Valley Finance v. United States*, 629 F.2d 162 (D.C.Cir.1980); *AVCO Delta Corp. v. United States*, 540 F.2d 258 (7th Cir.1976), *cert. denied*, 429 U.S. 1040, 97 S.Ct. 739, 50 L.Ed.2d 752 (1977).

■ Mr. Wolfe contends that the Service acted improperly because the taxes were never assessed against him personally. The Seventh Circuit has discussed the issue of whether a second assessment has to be made upon the alternate party when an alter ego theory is being pursued. The Court held that a "distinction must be drawn upon the basis of whether the corporate entity is being disregarded for the purpose of assessing taxes or for the purpose of collecting liabilities." *AVCO Delta Corp. v. United States*, 540 F.2d 258, 264, n. 5 (7th Cir.1976), *cert. denied*, 429 U.S. 1040, 97 S.Ct. 739, 50 L.Ed.2d 752 (1977). The Court held that if the corporate veil is being pierced for the purpose of assessing taxes, there must be a finding of "no business purpose," *Id.*, at 264. However, if the corporate veil is being pierced for the purpose of satisfying liabilities, such as taxes which have already been assessed, then this was not a tax theory but rather a theory available to any creditor, and a separate assessment of taxes is not required. *Id.*

Here, the Service is not asserting that the corporate entity should be disregarded for purposes of assessing taxes. It is a stipulated fact that the taxes were correctly assessed against the corporation. The Service is seeking to pierce the corporate veil only for purposes of collecting a liability.

Mr. Wolfe contends that the penalties assessed against the corporation for failure to report and pay taxes were improperly assessed because there was reasonable cause for failing to do so. Mr. Wolfe contends that because of financial difficulties due to the Arab oil embargo and the fact that the person who normally prepared the returns was sick for a few months the corporation had reasonable cause not to comply with the tax laws.

■ The penalties in issue were imposed under 26 U.S.C. §§ 6651(a)(1), (2), and 6656. All three sections provide for imposition of the penalties "unless it is shown that such failure [to file or to pay] is due to reasonable cause and not due to willful neglect."

Neither economic difficulties nor the illness of an employee constitute reasonable cause for failure to file returns or pay taxes. *Robinson's Dairy, Inc. v. Comm'r*, 35 T.C. 601 (1961), *aff'd*, 302 F.2d 42 (10th Cir. 1962). Almost every non-willful failure to pay taxes is the result of financial difficulties. But to allow businesses to postpone filing returns and paying taxes until economic conditions improve would severely restrict the Service's ability to raise revenue for the operation of the federal government. Moreover, as the corporation continued in business into March of 1976, it appears that the corporation was merely prefering other creditors over the United States. The taxpayer has the burden of showing that there was reasonable cause, *United States v. Rexach*, 482 F.2d 10 (1st Cir.1973), *cert. denied*, 414 U.S. 1039, 94 S.Ct. 540, 38 L.Ed.2d 330 (1973), and he has failed to do so.

The Court will issue an order conforming to this memorandum opinion.